## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **LISA D. MILLER, M.D.** and **MICHAEL E. DAUPHIN**, | **Removed from the State Court of Gwinnett County, State of Georgia No. 20-C-05932-S1** |
| Plaintiffs, | |
| v. | |
| **BECTON, DICKINSON AND COMPANY, et al.**, | **Civil Action No. _____** |
| Defendants. | |

---

## DEFENDANTS' BECTON, DICKINSON AND COMPANY
## AND C. R. BARD, INC.'S NOTICE OF REMOVAL

---

Lori G. Cohen
Sean P. Jessee
**GREENBERG TRAURIG, LLP**
Terminus 200, 3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305

Libretta Stennes (*pro hac vice forthcoming*)
**GREENBERG TRAURIG, LLP**
90 South 7th Street, Suite 3500
Minneapolis, MN 55402

*Attorneys for Defendants Becton, Dickinson and Company and C. R. Bard, Inc.*

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendants Becton, Dickinson and Company and C. R. Bard, Inc. (together, "BD"), by its undersigned attorneys, hereby remove this action, captioned *Lisa D. Miller, et al. v. Becton, Dickinson and Company, et al.*, bearing Case No. 20-C-05932-S1 from the State Court of Gwinnett County, State of Georgia, to the United States District Court for the Northern District of Georgia.

As grounds for removal, BD states as follows:

## INTRODUCTION

1.      This case involves Plaintiff Lisa D. Miller, M.D.'s ("Plaintiff") alleged exposure to ethylene oxide ("EtO") purportedly emitted from BD's medical device sterilization facility, brought by Plaintiff and her husband Michael E. Dauphin (collectively, "Plaintiffs").

2.      In an attempt to avoid federal jurisdiction, Plaintiffs fraudulently joined alleged Georgia residents John Lamontagne ("Lamontagne"), Boone Brothers ("Brothers"), and Ronald Pasdon ("Pasdon") and a limited liability company allegedly organized in Georgia, 9120 Wheat St. LLC ("Wheat Street") (collectively, "Alleged Georgia Defendants") under conclusory and unsupported theories that are barred by Georgia law.  Specifically, Wheat Street's liability is barred by way of its status as an out-of-possession landlord and Plaintiffs fail to allege any act or

1

omission on behalf of Lamontagne, Brothers, or Pasdon that could have conceivably caused Plaintiff's alleged injuries.  Plaintiffs' straw man allegations against the Alleged Georgia Defendants fail to withstand scrutiny.

3.      Removal of this action is appropriate on two separate grounds.  *First*, this Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the non-fraudulently joined parties are citizens of different states and the amount in controversy exceeds $75,000.  Although the Alleged Georgia Defendants are purportedly residents of Georgia, the Court should disregard their citizenship under the doctrine of fraudulent joinder.  *Second*, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims necessarily involve the construction and application of federal law and regulation.

## BACKGROUND

4.      Plaintiffs commenced this action on September 4, 2020, in the State Court of Gwinnett County, State of Georgia.  Before serving the defendants, Plaintiffs filed their First Amended Complaint on September 8, 2020.  The First Amended Complaint (attached as **Exhibit 1**) asserts claims against BD, the Alleged

Georgia Defendants, Ellen Kondracki ("Kondracki"), Samrat Khichi ("Khichi"), Elizabeth Woody ("Woody")[1], and John Doe Defendants.

5.      Plaintiffs admit that BD, Bard, Kondracki, Khichi, and Woody are not citizens of Georgia for diversity purposes.  (First Amended Complaint ("FAC") ¶¶ 4-5, 10-12).

6.      Lamontagne, Brothers, and Pasdon are pleaded as residents and citizens of Georgia—ostensibly to fraudulently destroy complete diversity.  (*Id.* ¶¶ 7-9).

7.      Plaintiffs allege that Wheat Street "is a limited liability company organized and existing under the laws of the State of Georgia."  (*Id.* ¶ 6).

8.      To the best of BD's knowledge, at the time of this filing no defendant has been served with a summons, complaint, or any other process, pleadings, and/or orders.   The BD Defendants specifically reserve the right to contest personal jurisdiction in this Court.

9.      Plaintiffs allege that BD operates a facility in Covington, Georgia that sterilizes medical equipment using EtO (the "Covington Facility").  (*Id.* ¶ 15).  The U.S. Food and Drug Administration ("FDA") recognizes EtO sterilization of medical devices as an important, established, and widely-used sterilization method with "a

---

[1]      BD, Bard, Lamontagne, Brothers, Pasdon, Kondracki, Khichi, and Woody are collectively referred to as the "BD Defendants."

long history of safe and effective use" by manufacturers to keep medical devices safe.[2]  In fact, "[f]or many medical devices, sterilization with [EtO] may be the only method that effectively sterilizes and does not damage the device."[3]  Importantly, the sterilization of critically needed life-saving medical equipment was exacerbated by the impact of the COVID-19 pandemic.  As detailed here and in Plaintiffs' First Amended Complaint, BD's use of EtO is subject to significant federal regulatory oversight under federal statutes and pursuant to federal regulations.

10.    Plaintiffs also allege Wheat Street rents a separate warehouse facility (the "Warehouse") to BD where BD stores medical supply surplus and EtO.  (FAC ¶¶ 6, 15).

11.    The First Amended Complaint alleges that from 2001 until present, Plaintiff lived within three and a half miles of the Covington Facility, and that since

---

[2]      *See* FDA Website, *Ethylene Oxide Sterilization for Medical Devices*, https://www.fda.gov/medical-devices/general-hospital-devices-and-supplies/ethylene-oxide-sterilization-medical-devices#epa, at 1 (last visited Sept. 6, 2020); *see also* FDA Guidance, *Submission and Review of Sterility Information in Premarket Notification (510(k)) Submissions for Devices labeled as Sterile* (Jan. 21, 2016), at 3, *available at* https://www.fda.gov/media/74445/download (last visited Sept. 3, 2020). The Court is permitted to take judicial notice of documents made publicly available by a government entity. *Henderson v. Sun Pharm. Indus.*, 809 F. Supp. 2d 1373, 1379 n.4 (N.D. Ga. 2011).

[3]      FDA Website, *Ethylene Oxide Sterilization for Medical Devices*, *supra* n.2.

until 2001 she worked less than one mile away from the Covington Facility.  (*Id.* ¶¶ 21-26).

12.     Plaintiff further alleges she was exposed to harmful levels of EtO and, as a result, was diagnosed with breast cancer in July of 2020.  (*Id.* ¶¶ 27, 117).

13.     Generally, Plaintiffs' claims against all defendants arise from the allegation that the Covington Facility and Warehouse emitted unsafe levels of EtO. All claims against Wheat Street arise from the single allegation that Wheat Street rented the Warehouse to BD where BD stores medical supply surplus and EtO.  (*Id.* ¶¶ 6, 167, 174-178).  The claims against Lamontagne, Brothers, and Pasdon arise from alleged actions in the course and scope of their employment with BD as alleged "high-level supervisors" that were responsible for "the Covington Facility's handling of EtO."  (*Id.* ¶¶ 7-9, 16).  The First Amended Complaint, however, fails to identify any action taken by Pasdon.   Beside a threadbare allegation that Lamontagne, Brothers, and Pasdon were involved in the improper disposal of EtO, the only specific conduct alleged with respect to Lamontagne and Brothers occurred between January 2019 and September 2019—approximately eighteen years after Plaintiff was allegedly first exposed to EtO.  (*Id.* ¶¶ 85, 103 (o), (r), (s); *see also id.* ¶¶ 21-25).

14.     Based on these allegations, Plaintiffs allege seven counts against all defendants, including negligence (Count I), public nuisance (Counts II and III), private nuisance (Count IV), Georgia Racketeer Influence and Corrupt Organizations ("RICO") (Count IX), punitive damages (Count X), and attorneys' fees (Count XI).  (*Id.* ¶¶ 117-165; 190-216).  Additionally, Plaintiffs assert claims for ultrahazardous activity/strict liability (Count V) against BD and the Alleged Georgia Defendants; aiding and abetting tortious conduct (Count VI) against Wheat Street; *respondeat superior* and/or vicarious liability (Count VII) against the BD Defendants; and loss of consortium (Count VII) against BD.  (*Id.* ¶¶ 166-189).

15.     Plaintiffs further pleaded their First Amended Complaint in such a way as to raise claims that necessarily involve the construction and application of federal law by repeatedly and extensively citing to duties purportedly arising under federal law and alleged violations of these federal duties by BD Defendants as the basis for the claims alleged therein, and thereby expressly states a federal question.  (*See e.g.*, FAC ¶¶ 43-65, 98-99, 104).

16.     Plaintiffs seek damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, loss of consortium, special damages including severe and permanent damage to her

health, punitive damages, and attorneys' fees and expenses.  (*Id*. ¶¶ 118, 124, 132, 134, 139-140, 146, 148, 153-154, 165, 173, 181, 186-189, 209-210, 212, 215-216).

17.    The BD Defendants deny Plaintiffs' allegations and deny that they caused any injury or are in anyway liable to Plaintiffs.

18.    Pursuant to 28 U.S.C. § 1446(a), a copy of all documents filed in the state court action, including all process, pleadings, and orders (other than the First Amended Complaint) is attached hereto as **Exhibit 2**.

## VENUE AND JURISDICTION

19.    Removal to this Court is proper under 28 U.S.C. §§ 90, 1391, 1441(a), and 1446(a) because the State Court of Gwinnett County, State of Georgia, where the action was filed, is a state court within this district and division.

20.    This Court has subject matter jurisdiction under both 28 U.S.C. § 1332(a) and 28 U.S.C. § 1331 because: (1) there is complete diversity of citizenship between Plaintiffs and BD, the only properly joined defendants, and the citizenship of the Alleged Georgia Defendants should be disregarded because they have been fraudulently joined; (2) Plaintiffs' claims necessarily involve the construction and application of federal law; and (3) all other requirements for removal are satisfied.

## BASIS FOR REMOVAL

## I.   THIS COURT HAS DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332 (a).

### A.   There Is Complete Diversity of Citizenship Between Plaintiffs and Removing Defendants.

21.   There is complete diversity of citizenship for purposes of federal jurisdiction.  Plaintiffs are citizens of the State of Georgia.  (FAC ¶ 1).[4]  BD and Bard are incorporated in the State of New Jersey.  (*Id.* ¶¶ 2-3).[5]  There is complete diversity between Plaintiffs and the only properly joined defendants, BD.[6]

---

[4]   Plaintiffs fail to include an allegation regarding Plaintiff Michael E. Dauphin's citizenship in the First Amended Complaint; however, for purposes of this Notice and without waiving the issue, BD assumes he is a citizen of the State of Georgia.  *Kuhn v. Brunswick Corp.*, 871 F. Supp. 1444, 1446 (N.D. Ga. 1994) ("when the initial pleading is 'indeterminate' as to the parties' citizenship, 'the burden is on the defendant seeking removal to scrutinize the case and remove it in a timely fashion.'").

[5]   Kondracki, Khichi and Woody are also diverse defendants (*see* FAC ¶¶ 10-12), but none of them are properly joined as defendants in this case for the reasons discussed in Section B(2), *infra* as to Lamontagne, Brothers, or Pasdon (*i.e.*, Plaintiffs fail to allege any act or omission on behalf of any individually named defendant that could have conceivably caused Plaintiff's alleged injuries).

[6]   John Doe Defendants do not defeat removal.  *See* 28 U.S.C. § 1441(b)(1) ("in determining whether a civil action is removable [under diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded"); *see also Roper v. Saxon Mortg. Servs.*, No. 1:09-CV-312-RWS, 2009 U.S. Dist. LEXIS 37794, at *5 (N.D. Ga. May 5, 2009) ("the existence of possible unknown and unnamed defendants is not considered for purposes of removal" (citing 28 U.S.C. §1441(a)).

**B.      The Citizenship of the Alleged Georgia Defendants Should Be Ignored Under the Doctrine of Fraudulent Joinder.**

22.     The citizenship of the Alleged Georgia Defendants should be disregarded under the doctrine of fraudulent joinder.  Plaintiffs do not, *and cannot*, allege claims with any possibility of success against the Alleged Georgia Defendants.  Plaintiffs plainly joined the Alleged Georgia Defendants in an attempt to evade federal jurisdiction.

23.     There are three instances in which a joinder of a non-diverse party is fraudulent, and does thus not defeat diversity jurisdiction, including where there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant.  *Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 (11th Cir. 1998).  Here, there is no possibility that Plaintiffs can prove a cause of action against the Alleged Georgia Defendants.

**1.      Plaintiffs Have No Possibility of Success Against Wheat Street.**

24.     Plaintiffs purport to bring claims against Wheat Street for negligence, public and private nuisance, ultrahazardous activity/strict liability, aiding and abetting tortious conduct, RICO, punitive damages, and attorneys' fees.  All claims against Wheat Street arise from the single allegation that Wheat Street rented the Warehouse to BD where BD stores medical supply surplus and EtO allegedly

9

without operating permits.  (FAC ¶¶ 6, 167, 174-177).[7]  Plaintiffs have no possibility

of success on any claim against Wheat Street for three separate reasons.

25.    *First*, under Georgia law, the liability of an out-of-possession landlord

is determined by O.C.G.A. § 44-7-14, not common law.  *Martin v. Johnson-Lemon*,

271 Ga. 120, 123, 516 S.E.2d 66, 68 (1999) (finding error by the court of appeals in

assessing landlord's potential liability based upon principles of common law

negligence).  Here, Plaintiffs allege only that Wheat Street rented the Warehouse to

BD.  (FAC ¶¶ 6, 166, 173-176).  Accordingly, under O.C.G.A. § 44-7-14, Wheat

Street "is not responsible to third persons for damages resulting from the negligence

or illegal use of the premises by the tenant," and Plaintiffs do not allege "damages

arising from defective construction or for damages arising from the failure to keep

the premises in repair."    O.C.G.A. § 44-7-14; *see also Fraley v. Lake*

*Winnepesaukah, Inc.*, 631 F. Supp. 160, 161 (N.D. Ga. 1986) (granting summary

judgment in favor of landlord where plaintiff presented no evidence to contradict

landlord's showing that it was out-of-possession of the amusement park); *Lewis v.*

---

[7]    As a threshold matter, the First Amended Complaint fails to adequately plead
the citizenship of Wheat Street, who is alleged to be a limited liability company.
Specifically, Plaintiffs have not satisfied the citizenship requirement properly by
identifying all of the limited liability company's members and their citizenships.
*Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304,
1305 (11th Cir. 2011).

*Axens N. Am., Inc.*, No. 4:14-cv-27, 2014 U.S. Dist. LEXIS 146790, at *7 (S.D. Ga. Oct. 15, 2014) (finding that "just as a landlord cannot be responsible for the negligent acts of a tenant" owner of real property on which co-defendant operated a plant owed no duty to plaintiff); *Howell Gas of Athens v. Coile*, 112 Ga. App. 732, 737-38, 146 S.E.2d 145, 150 (1965) ("A landlord who has leased premises to a tenant is not liable for a nuisance maintained upon the premises, by the tenant, during the lease."). Fraudulent joinder—as to all Plaintiffs' claims against Wheat Street—is established on this ground alone.  *See e.g. McNulty v. Auchter Indus. Serv., Inc.*, No. 15-5363, 2015 U.S. Dist. LEXIS 154970, 2015 WL 7252907, at *3 (E.D. Pa. Nov. 17, 2015) (holding that doctrine of fraudulent joinder applied where undisputed evidence proved that out-of-possession landlords could not be held liable under Pennsylvania law for the injuries).

26.    *Second*, as a matter of law, Plaintiffs' aiding and abetting tortious conduct claim against Wheat Street does not have a possibility of success.  As a threshold matter, it is unclear whether Georgia law would even recognize such a claim in this context.  *See e.g., Siavage v. Gandy*, 350 Ga. App. 562, 566, 829 S.E.2d 787, 790 (2019) ("we conclude that the tort of 'aiding and abetting fraud' does not exist as a basis for liability under Georgia law. Instead, one who 'knowingly participates in a fraud' may be held liable for the fraud.").  To the extent Plaintiffs'

aiding and abetting tortious conduct claim is not also barred by the application of O.C.G.A. § 44-7-14, the First Amended Complaint fails to allege the essential elements of any such claim. Plaintiffs do not allege Wheat Street acted at all, let alone purposefully or with malice, to procure BD's alleged breach of these duties. Rather, the single allegation made as to Wheat Street is that it rented the Warehouse to BD where BD stores medical supply surplus and EtO without operating permits. (*Id.* ¶¶ 6, 167, 174-177). Moreover, while the First Amended Complaint baldly alleges that but for Wheat Street's renting of the Warehouse to BD, BD would not have allegedly emitted EtO, this strained allegation does not link any purposeful or malicious conduct to Plaintiff's injuries.

27.   *Third,* Plaintiffs' RICO claim fails as to all defendants, including Wheat Street. Under Georgia law, "RICO liability arises solely from the commission of certain predicate acts which must constitute independent criminal violations of one of the statutes specified in the RICO act." *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith*, 236 Ga. App. 181, 183, 511 S.E.2d 558, 560 (1999). Here, Plaintiffs' RICO claim is predicated on alleged false statements made to the City of Covington, Governor Brian Kemp, and Georgia Environmental Protection Division ("Georgia EPD") between January and September 2019 regarding EtO emissions at the Covington Facility. (FAC ¶¶ 199-207). The First Amended Complaint alleges these

representations were transmitted through the U.S. Postal Service and email and intended to "cover up the true extent of the Covington Facility's fugitive EtO emissions." (*Id.* ¶ 206-207). According to Plaintiffs, this conduct constitutes racketeering activities under O.C.G.A. § 16-14-3(5)(A) and 5(B) including (xxii) false statements and concealment of facts, mail fraud, and wire fraud. (*Id.* ¶ 194-195).

28.     As a preliminary matter, Plaintiffs' First Amended Complaint fails to state a RICO claim as to any defendant because Plaintiff cannot establish that her alleged injury was caused "by reason of" a RICO predicate act. *See Brantley v. Muscogee Cty. Sch. Dist.*, No. 4:10-CV-77 (CDL), 2011 U.S. Dist. LEXIS 94704, at *25 (M.D. Ga. Aug. 24, 2011) (dismissing Georgia RICO claims based on mail and wire fraud where plaintiffs did not sufficiently alleged that their injuries were "by reason of" any alleged mail or wire fraud). Here, Plaintiffs allege EtO exposure from 2001 until present and Plaintiff was diagnosed with breast cancer in July 2020. (FAC ¶¶ 21-27). All of the alleged false statements occurred in 2019, and none of the alleged false statements were made to Plaintiff. Furthermore, none of the allegedly false statements can be attributed to Wheat Street. *See Hedquist*, 236 Ga. App. at 183 (dismissing defendant where plaintiff's RICO claims were predicated on misleading public statements made by co-defendant).

29.    There is thus no possibility that Plaintiffs can establish a cause of action against Wheat Street and the Court should find that Wheat Street has been fraudulently joined in an attempt to evade federal jurisdiction.

### 2. Plaintiffs Have No Possibility of Success Against Lamontagne, Brothers, and Pasdon.

30.    Plaintiffs purport to bring claims against Lamontagne, Brothers, and Pasdon for negligence, public and private nuisance, ultrahazardous activity/strict liability, *respondeat superior* and/or vicarious liability, RICO, punitive damages, and attorneys' fees.  Plaintiffs have no possibility of success on any claim against Lamontagne, Brothers, or Pasdon for two separate reasons.

31.    *First*, the threadbare allegations made against Lamontagne, Brothers, and Pasdon are that they were "high-level supervisors and managers" that were responsible for "the Covington Facility's handling of EtO," that they were involved in the improper disposal of EtO, and that Lamontagne and Pasdon authored allegedly false and misleading affidavits submitted by BD to City of Covington and Georgia EPD in September 2019.  (*Id.* ¶¶ 7-9, 16, 85, 103(o), (r), (s)).  These minimal allegations are insufficient to establish a possibility of success as to any claim.  Even taking Plaintiffs' characterization of Lamontagne, Brothers, and Pasdon's job descriptions as true, the First Amended Complaint does not specifically assert the necessary allegation that they had any control or discretion over the Covington

14

Facilities' EtO emissions—the alleged cause of Plaintiff's injuries or any other basis for imposing any duty. *See Spindel v. Gulf Oil Corp.*, 100 Ga. App. 323, 326, 111 S.E.2d 160, 162 (1959) (affirming dismissal of defendant with no control over the premises at issue).[8]  Moreover, Plaintiffs fail to identify a single negligent act or omission by Lamontagne, Brothers, and Pasdon—separate and apart from their general allegations against "Defendants" collectively—to support any claim brought against them.

32.   *Second*, Plaintiffs have not (and cannot) demonstrate that any alleged conduct of Lamontagne, Brothers, or Pasdon caused Plaintiff's injuries.  The only specific conduct alleged with respect to Lamontagne and Brothers relate to letters purportedly sent in January and May of 2019 and affidavits executed in September 2019—approximately eighteen years after Plaintiff's alleged initial exposure. Moreover, the First Amended Complaint does not allege any specific conduct with respect to Pasdon.  (FAC ¶¶ 21-27, 103).  Accordingly, without any causality

---

[8]    *See also Anderson v. Radisson Hotel Corp.*, 834 F. Supp. 1364, 1370 (S.D. Ga. 1993) ("[A]n action will not lie if defendant owes a duty, but does not owe it to the plaintiff."); *Dep't of Labor v. McConnell*, 305 Ga. 812, 815, 828 S.E.2d 352, 358 (2019) (finding that defendant did not owe a duty to plaintiff or proposed class members to safeguard and protect their personal information); *Ihesiaba v. Pelletier*, 214 Ga. App. 721, 724–25, 448 S.E.2d 920, 923 (1994) (recognizing the "general rule that there is no duty to control the conduct of third persons to prevent them from causing physical harm to others").

alleged, Plaintiffs have no possibility of success with respect to any claim, including their RICO claim as more fully discussed above.  *See Faison v. Wyeth, Inc.*, 353 F. Supp. 2d 1273, 1276 (S.D. Ga. 2004) (finding that Georgia individual defendants were fraudulently joined where plaintiff could not possibly prove a causal connection between her injury and the alleged misrepresentations).

33.    Based on the above, there is no possibility that Plaintiffs can establish a cause of action against Lamontagne, Brothers, or Pasdon and the Court should find that they have been fraudulently joined in an attempt to evade federal jurisdiction.

### C.    The Amount in Controversy Exceeds $75,000.

34.    The amount-in-controversy requirement for diversity jurisdiction is satisfied in this case because it is clear from the face of Plaintiffs' First Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

35.    When a plaintiff's complaint does not allege a specific amount of damages, it still may be facially apparent from the complaint itself "that the amount in controversy exceeds the jurisdictional minimum, even when the complaint does not claim a specific amount of damages."  *Roe v. Michelin N. Am., Inc*., 613 F.3d 1058, 1061 (11th Cir. 2010) (quotations omitted).  In determining whether it is facially apparent that the amount in controversy exceeds the jurisdictional minimum,

a court may independently appraise the value of the pleaded claims based on its judicial experience and common sense.  *Id.* at 1061-63.

36.     It is facially apparent from Plaintiffs' First Amended Complaint that the amount in controversy exceeds $75,000, exclusive of interest and costs.  The First Amended Complaint alleges that Plaintiff contracted breast cancer and seek damages in the form of medical expenses, physical disability, mental and physical pain and suffering, extreme emotional distress, loss of consortium, special damages including "severe and permanent damage to her health," punitive damages, and attorneys' fees and expenses.  (*Id.* ¶¶ 118, 124, 132, 134, 139-140, 146, 148, 153-154, 165, 173, 181, 186-189, 209-210, 212, 215-216).   Although BD strongly disputes that Plaintiffs are entitled to any damages, the amount-in-controversy requirement is met here because the serious nature of the injuries alleged in the First Amended Complaint makes it facially apparent that the amount in controversy exceeds $75,000.

## II.    THE COURT ALSO HAS SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1331.

37.     Removal is also proper pursuant to 28 U.S.C. § 1331 because this Court has subject matter jurisdiction over state law claims that necessarily involve the construction or application of federal law.  28 U.S.C. § 1331.  Here, although Plaintiffs purport to allege only state-law claims, the gravamen of all their claims—

*i.e.,* alleged unsafe practices in the process of sterilizing medical equipment—is necessarily federal in character.  Indeed, the entire basis of Plaintiffs' First Amended Complaint is founded on the Federal EPA's 2016 Evaluation of the Inhalation of Carcinogenicity of Ethylene Oxide, in which the Federal EPA changed its designation of EtO from "probably carcinogenic" to "carcinogenic" and the Federal EPA's National Air Toxics Assessment.  (*Id.* at ¶¶ 49, 65).

38.    As set forth in Plaintiffs' First Amended Complaint, EtO emissions are regulated by the Federal EPA under federal law, including the Clean Air Act ("CAA"), 42 U.S.C. 7401 et seq.  (*See* FAC ¶¶ 53-65).  The CAA is the primary mechanism through which the federal government manages air emissions from industrial facilities in the United States.  Among many regulatory provisions, the CAA requires the Federal EPA to set national emission standards.  42 U.S.C. § 7412. Pursuant to that mandate, the Federal EPA has directly regulated EtO emissions since 1994.  *See* 40 C.F.R. § 63, Subpart O (Ethylene Oxide Emissions Standards for Sterilization Facilities); National Emission Standards for Hazardous Air Pollutants for Ethylene Oxide Commercial Sterilization and Fumigation Operations, 59 Fed. Reg. 62585-01 (Dec. 6, 1994).

39.    The CAA also creates a nationally-uniform system of permits, known as "Title V permits," for major industrial sources to ensure that emission standards

are identified and met.  40 C.F.R. § 70.1.  The Federal EPA has not banned EtO emissions.  To the contrary, the Federal EPA allows operators of facilities, including BD, to release levels of EtO pursuant to the substantive requirements for the Title V permitting program.  It also has the power to authorize individual states to administer the permitting program on the Federal EPA's behalf.  40 C.F.R. § 70 *et seq.*  Indeed, the Air Quality Permit for the Covington Facility was expressly "issued for the purpose of establishing practically enforceable emissions limitations such that the facility will not be considered a major source with respect to Title V of the [CAA]." (FAC at Ex. A).

40.     Together, the dual regulations set by Federal EPA and Georgia EPD limit the Covington Facility's overall use of EtO and require most sources of EtO at the facility to be connected to emission abatement measures, which are required to remove at least 99% of the EtO before it can be emitted to the air, pursuant to the federal NESHAP.  40 C.F.R. § 63.362(a).  The Covington Facility is in compliance with its permit and the federal standards and, in fact, emits far less than the permitted amount of EtO.

41.     Not surprisingly given the extensive federal regulatory framework overseeing EtO, Plaintiffs' First Amended Complaint repeatedly and extensively cites to duties purportedly arising under federal law and alleged violations of these

19

federal duties by BD Defendants as the basis for the claims alleged therein, and therefore a federal question plainly appears on Plaintiffs' First Amended Complaint. (*See e.g.*, FAC ¶¶ 53-65).  Nonetheless, Plaintiffs argue that the BD Defendants beached their duty by, amongst other things, "[e]mitting EtO into the air from the Covington Facility." (*Id.* ¶ 122(a)).  In alleging this duty, Plaintiffs seek to substitute a different standard of care for the carefully-designed emission standard for EtO that was authorized by Congress, established by the Federal EPA, and implemented in a federally-approved permit.   Plaintiffs' First Amended Complaint is a direct challenge to the CAA's EtO standards as well as the Georgia EPD's implementation of those standards.  Plaintiffs ask the state court to ignore these uniform federal standards and impose new and different standards.

42.     Similarly, Plaintiffs also allege that the BD Defendants breached their duty by "[u]sing EtO as part of its sterilization process . . ." (FAC ¶ 122(c)).  As noted, FDA recognizes that "[f]or many medical devices, sterilization with [EtO] may be the only method that effectively sterilizes and does not damage the device."[9] In this regard, the sterilization of medical devices is highly regulated by FDA.  FDA regularly inspects the Covington Facility and as part of its Good Manufacturing

---

[9]     FDA Website, *Ethylene Oxide Sterilization for Medical Devices*, *supra* n.2.

Practices regulations requires that medical devices and equipment be sterilized pursuant to exacting protocols that must be rigorously tested and validated.[10]   As FDA has explained, "these standards help ensure levels of ethylene oxide on medical devices are within safe limits . . . ."[11]   Once the sterilization process is approved by FDA, a medical device manufacturer generally cannot change that process without FDA first viewing and approving of the proposed change.[12]   Again, Plaintiffs' First Amended Complaint is a direct challenge to FDA's regulation of medical device sterilization and Plaintiffs ask the state court to ignore these federal requirements and impose new and different standards.

43.     Accordingly, this Court has original and removal jurisdiction given that the claims arise "under the Constitution, laws, or treaties of the United States."  28 U.S.C. §§ 1331, 1441(a).  Among the civil actions that "arise under" federal law are "state law claims that implicate significant federal issues."  *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).  Such claims capture

---

[10]     *See CPG Sec. 100.550 Status and Responsibilities of Contract Sterilizers Engaged in the Sterilization of Drugs and Devices*, U.S. FOOD & DRUG ADMIN., http://academy.gmp-compliance.org/guidemgr/files/2018_ComplianceManuals_CompliancePolicyGuides_Contract_Sterilizers.pdf (last visited Sept. 6, 2020).

[11]     FDA Website, *Ethylene Oxide Sterilization for Medical Devices*, *supra* n.2.

[12]     *Id.*

the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* Thus, federal question jurisdiction also exists where, as here, a "state law claim necessarily raise[s] a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

44.   Plaintiffs may not avoid the consequences of *Grable* through "artful" pleading or via how she labels her claims. *See Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) ("[i]f a court concludes that plaintiff has 'artfully pleaded' claims" by omitting to plead federal questions, "it may uphold removal even though no federal question appears on the face of the plaintiff's complaint"). The fact that the Covington Facility also has state responsibilities does not take this matter outside the Court's purview. *See Davis v. GMAC Mortg. LLC*, No. 4:11-CV-95 (CDL), 2012 U.S. Dist. LEXIS 33351, at *23 (M.D. Ga. Mar. 13, 2012) (applying *Grable* and concluding that "Plaintiffs' claims necessarily raise a disputed and substantial issue of federal law, which the Court can entertain without upsetting the balance between state and federal judicial responsibilities."). Given Plaintiffs' direct

challenge to federal standards, regulations and enforcement, as well as their reliance on federal agency opinions to state a claim, the First Amended Complaint necessarily raises a disputed issue of federal law as to the governing standards for EtO emissions and the sterilization of medical equipment.

45.     Accordingly, Plaintiffs' First Amended Complaint is also removable to this Court under 28 U.S.C. § 1331 because it is federal in character; the right to relief depends upon the resolution of substantial, disputed questions of federal law; and federal jurisdiction may not be defeated by artful pleading.

## III.   ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

### A.   This Notice of Removal Is Timely

46.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed before service has been effectuated on any defendant.  *See* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1).

47.     Additionally, removal is proper because the Alleged Georgia Defendants have not been "properly joined and served" at the time of this filing and the forum defendant rule of 28 U.S.C. § 1441(b) is inapplicable.[13]

---

[13]     At the time of removal, as long as no forum defendant has been "properly joined and served," a defendant may remove.  *Francis v. Great W. Cas. Co.*, No. 5:17-CV-432 (MTT), 2018 U.S. Dist. LEXIS 27395, at *5 (M.D. Ga. Feb. 21, 2018) (finding that the plain language of § 1441(b)(2) "states that removal is improper only

**B.     Consent to Removal**

48.     For purposes of removal based on diversity jurisdiction under 28 U.S.C.
§ 1332(a) and pursuant to 28 U.S.C. § 1446(b), all defendants who have been
properly joined *and* served must consent to removal.

49.     Consent to removal is not required because no defendant has been
properly served.  *See* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been
properly joined *and served* must join in or consent to the removal of the action")
(emphasis added); *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1208 (11th
Cir. 2008) ("[A] defendant has no obligation to participate in any removal procedure
prior to his receipt of formal service of judicial process."); *Johnson v. Wellborn*, 418
F. App'x 809, 815 (11th Cir. 2011) ("The requirement that there be unanimity of
consent in removal cases with multiple defendants does not require consent of
defendants who have not been properly served").[14]

---

when a resident defendant has been *joined and served* at the time of removal")
(emphasis in original).   Here, Plaintiffs failed to serve any Alleged Georgia
Defendant prior to BD's filing of this notice of removal.   Applying the plain
language interpretation of § 1441(b)(2) removal is proper.  *See e.g., Encompass Ins.
Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 153-54 (3d Cir. 2018), *reh'g denied*
(Sept. 17, 2018) (finding that plaintiff availed itself of the plain meaning of the
statute by failing to effectuate service on a forum defendant before removal).

[14]     While the remaining Defendants do not need to consent to the removal
because they have not been served, all of the BD Defendants consent to the removal
of this case to federal court.

**C.**     **Notice of Removal to Plaintiff**

50.     Pursuant to 28 U.S.C. § 1446(d), upon filing the Notice of Removal, BD will furnish written notice to Plaintiffs' counsel, and will file a copy of this Notice with the Clerk of the State Court of Gwinnett County, State of Georgia, (**Exhibit 2**).

51.     By filing this Notice of Removal, BD does not waive any defenses that may be available to it and expressly reserves all such defenses.

**<u>CONCLUSION</u>**

**WHEREFORE**, Defendants Becton, Dickinson and Company and C. R. Bard, Inc. hereby remove this action from the State Court of Gwinnett County, State of Georgia to the United States District Court for the Northern District of Georgia.

Respectfully Submitted,

Dated: September 10, 2020                    By: */s/ Lori G. Cohen*

Lori G. Cohen
Georgia Bar No. 174455
Sean P. Jessee
Georgia Bar No. 940342
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Tel: (678) 553-2100
Fax: (678) 553-2212

Libretta Stennes
(*pro hac vice forthcoming*)
**GREENBERG TRAURIG, LLP**
90 South 7th Street, Suite 3500
Minneapolis, MN 55402

*Attorneys for Defendants*
*Becton, Dickinson and Company*
*and C. R. Bard, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D</u>

I hereby certify that the foregoing document was prepared in Times New Roman, 14-point font, as provided by Local Rule 7.1D.

             <u>*/s/ Lori G. Cohen*   </u>
             Lori G. Cohen

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September, 2020, the foregoing Notice of Removal was filed electronically with the Clerk of Court using CM/ECF.  I also certify that a copy of the foregoing is being served upon the following by United States mail, postage prepaid and email:

Darren W. Penn
darren@pennlawgroup.com
William L. Ballard
bill@pennlawgroup.com
Scott M. Patterson
scott@pennlawgroup.com
Alexandra "Sachi" Cole
sachi@pennlawgroup.com
Kevin M. Ketner
kevin@pennlawgroup.com
**PENN LAW LLC**
4200 Northside Parkway, NW
Building One, Suite 100
Atlanta, Georgia 30327

*Attorneys for Plaintiffs*

9120 Wheat St. LLC
Registered Agent: John L. Travis
5181 N Dearing Street SE
Covington, GA 30014

*Defendant 9120 Wheat St. LLC*

DATED:      September 10, 2020                                    */s/ Lori G. Cohen*